UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Carmella L. Amick, et al.,

     Plaintiffs,

     v.                           Case No. 2:09–cv–812

Ohio Department of                 Judge Michael H. Watson
Rehabilitation & Corrections,     Magistrate Judge Kemp
et al.,

     Defendants.


## OPINION AND ORDER

On December 17, 2010, the Court issued an Opinion and Order which extended the discovery cutoff date to February 4, 2011, for, among other purposes, allowing Plaintiffs to conduct additional discovery to determine the bases, if any, for naming additional defendants to Plaintiffs' civil rights and medical malpractice claims. ECF No. 82. That Opinion and Order also established a schedule for the filing of additional briefs on the issues raised by Plaintiffs' motion for leave to file an amended complaint.

On January 18, 2011, Plaintiffs filed an amended motion for leave to file a first amended complaint. ECF No. 83. For the following reasons, the Court will grant the motion in part and deny it in part.

I.

The Court incorporates its prior discussion about the background of the motion for leave to amend. Briefly stated, when Plaintiffs initially filed their motion, they candidly admitted that they had only recently received documents from Defendants and

that they proposed to assert claims against a number of additional defendants based on incomplete information about their role in the events that led up to Mr. Amick's murder by another inmate at the Belmont Correctional Institution. The Court deferred a ruling on that motion in order to give Plaintiffs an opportunity to determine whether there was a factual basis for joining any or all of these defendants (47 in number) as parties to the case.

In their amended motion, Plaintiffs have substantially reduced the number of defendants they wish to join. The complaint they propose to file would identify by name nine of the ten "John Doe" defendants described in the original complaint and also join one new defendant. They also seek to reassert certain state law claims against Defendant Lynette Scott, claiming that they now believe her to be a private individual rather than a state employee, and to clarify one of their Section 1983 claims. Finally, they seek to join a number of corporate entities (three staffing companies) which were described as "John Doe" companies in the original complaint. They argue that there is an evidentiary basis for the joinder or naming of each of these parties.

In response, Defendants continue to oppose any amendment to the complaint. They assert that none of the proposed new defendants would properly be joined, either because there is no basis for any claim against them or because they are clearly entitled to immunity. They also argue, as they did in opposing the prior motion, that the joinder of these parties would unduly disrupt the case schedule. In reply, Plaintiffs dispute these contentions and argue, among other things, that their expert witness, Dr. Stephen Noffsinger, whose affidavit is attached to the reply memorandum, has rendered an opinion that forms the factual basis for joinder of some of the proposed

new parties. As always, the question before the Court when faced with a motion for leave to amend is whether the requirements of Federal Rule of Civil Procedure 15(a), which directs the Court freely to grant leave to amend when the interests of justice so require, are satisfied here with respect to some or all of the proposed new defendants and new claims. Because the Court has already determined that Plaintiffs acted diligently in presenting their motion, it will not be necessary to discuss any factors in great detail other than whether allowing the complaint to be amended would be an exercise in futility.

II.

It is important to recall that all of the parties' arguments are made in the context not of a motion for summary judgment nor a motion to dismiss for failure to state a claim upon which relief can be granted, but a motion for leave to amend. Further, although the Court's prior order deferring a decision on the motion was made in order to give Plaintiffs an opportunity to conduct further discovery, the Court did not intend to require Plaintiffs to come forward with specific evidence to support either additional claims for relief or the addition of new defendants and to test the sufficiency of that evidence before permitting the complaint to be amended. Such a procedure would not be proper even in the context of Rule 12(b)(6) motion to dismiss unless the Court specifically so ordered and the parties had an opportunity to present the issue with matters outside the pleadings. *See* Fed. R. Civ. P. 12(d); *Gunasekera v. Irwin*, 551 F.3d 461 (6th Cir. 2009).

Rather, based upon Plaintiffs' concession that they employed a "shotgun" approach in their first motion because they were up against a deadline and had not yet

received much of the discovery they needed in order to be able to identify with any precision which new claims and new defendants they wished to add, the Court granted them leave to complete that discovery so that the field of new claims and new defendants could be appropriately narrowed. Once that occurred, and a proposed amended complaint was then tendered, the Court would still evaluate it as it would any other proposed amended complaint. Consequently, whether there is enough evidence to support any new claims or the alleged liability of any new defendants remains a question for subsequent summary judgment practice. The issue of whether any new claim or the addition of any new defendant is supported by a sufficient legal basis must be judged from the proposed amended complaint itself, and evaluated from that standpoint only to determine if any portion of the proposed amended complaint would be futile, which is properly considered when ruling on a motion for leave to amend. *See Robinson v. Mich. Consol. Gas Co.*, 918 F.2d 579 (6th Cir. 1990); *Head v. Jellico Housing Auth.*, 870 F.2d 1117 (6th Cir. 1989).

### III.

The parties' memoranda organize their discussion of the proposed new claims primarily by the defendant or defendants against whom those claims are asserted. The Court will follow the same format here.

### A. Lynette Scott

Lynette Scott is, according to the parties, a nurse who performed services at the Belmont Correctional Institution under a services contract. Plaintiffs had voluntarily dismissed a number of claims against her, but now wish to reassert certain state law claims. It is Defendants' position that because Ms. Scott was a contract employee of

the State of Ohio, she is entitled to the same immunity from state law claims as other state employees. Therefore, because the complaint does not allege that the Ohio Court of Claims has determined that she acted manifestly outside the scope of her employment, any state law claims asserted against her would be immediately subject to dismissal under Ohio Revised Code § 9.86. In response, Plaintiffs, citing to an unreported decision from the Sixth Circuit Court of Appeals, *Cook v. Martin*, 148 F. App'x. 327 (6th Cir. July 27, 2005), argue that Ms. Scott would not be entitled to qualified immunity.

One of the issues addressed in *Cook* was whether a privately-employed physician's assistant, who was assigned to work at a prison hospital, could claim the benefits of qualified immunity, which is usually extended to governmental employees against whom claims under 42 U.S.C. § 1983 are asserted. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The court held that he could not, noting the general rule that privately-employed individuals, even if they supplied services to a state prisoner at the request of the state, do not typically enjoy the same immunity as state employees because there is a lack of historical precedent for such immunity, and because the purposes behind the qualified immunity doctrine do not justify its extension to this type of defendant. *See Cook, supra* (citing, *inter alia*, *Richardson v. McKnight*, 521 U.S. 399 (1997)). However, that holding is not applicable to the issue which Defendants have raised, because their argument is based not on the qualified immunity defense available to Defendants named in federally-based claims asserted under § 1983, but an immunity from state-law claims which is derived from Ohio Revised Code § 9.86.

Generally, Ohio governmental employees enjoy immunity from state law claims

under § 9.86 unless and until the Ohio Court of Claims decides that they acted manifestly outside the scope of their employment. *See Haynes v. Marshall*, 887 F.2d 700 (6th Cir. 1989). Defendants cite to another section of the Revised Code, § 109.36, for the proposition that certain persons who provide services to the State of Ohio under a contract are deemed to be state employees and thus entitled to the § 9.86 immunity. Section 109.36 states that an officer or employee of the State of Ohio includes, *inter alia*, "[a] person that, at the time a cause of action against the person, partnership, or corporation arises, is rendering medical, nursing, dental, podiatric, optometric, physical therapeutic, psychiatric, or psychological services pursuant to a personal services contract or purchased service contract with a department, agency, or institution of the state." Ohio Rev. Code § 109.36(A)(1)(b). The Ohio Supreme Court has held that this definition applies to the term "state employee" as it appears in § 9.86. *Theobald v. Univ. of Cincinnati*, 111 Ohio St.3d 541, 543 (2006).

Here, although the determination of whether a private individual qualifies as a "state employee" by virtue of a contract with the State can, in some cases, be a question of fact not capable of resolution in the context of a motion to dismiss (or a motion to amend), Plaintiffs apparently concede that the only reason that Ms. Scott provided services to Mr. Amick was that she was working under contract with the Belmont Correctional Institution or the Ohio Department of Rehabilitation and Correction. Further, as the Court has already noted, Plaintiffs have not presented any argument addressing her contention that she cannot be sued here on state law theories because the Ohio Court of Claims has never made the required determination under § 9.86. Thus, the Court agrees with Defendants that allowing Plaintiffs to assert state

law claims against Ms. Scott would be an exercise in futility.

## B.  Dr. Elliot, Dr. Turton, and Mr. Yevincy

Defendants next argue that the amended complaint does not adequately plead a

§ 1983 claim against these three defendants.  With respect to the two physicians,

Defendants assert that the complaint appears to allege no more than negligence,

whereas in order to state a claim for an Eighth Amendment violation in the prison

setting, there must be an allegation that the defendant exhibited deliberate indifference

to an inmate's serious medical needs.  *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 839

(1994).  They raise the same issue with respect to Mr. Yevincy, a social worker,

asserting that the entire claim against him is based on an alleged negligent

misdiagnosis of Mr. Amick's condition.  They also make the same argument about

immunity for state law claims asserted against Drs. Elliot and Turton that they advanced

on behalf of Ms. Scott, noting that both physicians also provided services to inmates

under a contract with the state and that neither has been found by the Ohio Court of

Claims to have acted manifestly outside the scope of his employment.

The key to resolving this dispute is what the proposed amended complaint

actually pleads.  The First Cause of Action alleges a claim under 42 U.S.C. § 1983

against eighteen individual Defendants, including Dr. Elliot, Dr. Turton, and Mr. Yevincy.

It asserts that all of these Defendants deprived Mr. Amick of his rights under the

Fourteenth Amendment, including the right to be free from the infliction of cruel and

unusual punishment and to receive adequate medical care.  More specifically, in ¶ 82,

the proposed amended complaint avers that each of the individual Defendants was

"deliberately indifferent to the serious medical and/or mental health needs of Harry J.

Amick." Thus, the complaint itself contains the necessary allegations of deliberate

indifference. To the extent that Defendants question the underlying factual support for

this allegation—and, as explained above, this is not really the time or place for such a

challenge—Plaintiffs attached an affidavit from their expert, Dr. Noffsinger, to the reply

brief which states that each of these three Defendants (as well as others) was

"deliberately indifferent to the medical and psychiatric needs of Harry Amick." Whether

Plaintiffs can ultimately prove this assertion remains to be seen, but on this record the

Court cannot say that it would be an exercise in futility to permit them to plead it.

## C. MHM Services, Inc., MHM Ohio, Inc., and Annashae Corp.

The original complaint named fifteen John Doe defendants and described some

of them as "entities who . . . were responsible for providing medical and/or mental

health care to Harry J. Amick . . . ." The proposed amended complaint seeks to

substitute three corporations, MHM Services, Inc., MHM Ohio, Inc., and Annashae

Corp., for three of these John Doe defendants. Plaintiffs assert that these entities

contracted with either the Belmont Correctional Institution or the Madison Correctional

Institution (or with ODRC on behalf of those institutions) to provide medical or

psychological services to inmates at those institutions, and that they can therefore be

held liable under § 1983 and also on a *respondeat superior* theory for the actions or

inactions of their contract employees. Defendants argue that corporations cannot be

held vicariously liable for the actions of their agents under § 1983, so that the assertion

of such claims against these corporations would be an exercise in futility. Plaintiffs

note, in their reply, that Defendants' argument appears to be confined to federal law

claims and would not affect any state law claims asserted against them, such as

wrongful death, negligence, loss of consortium, infliction of emotional distress, or negligent training, supervision, and discipline. It appears that Plaintiffs are correct in this observation, so the Court will address only the argument that the three corporations cannot be sued under § 1983 on a *respondeat superior* theory.

From the parties' briefing, it does not appear to be necessary to resolve this issue. Plaintiffs' reply brief appears to limit the claims against the three corporations to two types of claims: a direct claim against them under § 1983, and *respondeat superior* as it relates only to the state law claims. As to the former type of claim, the Court of Appeals has held that a corporate entity can be held liable if the corporation, acting through an agent, "deprived [the plaintiff] of a right secured by the Constitution or laws of the United States while acting 'under color of state law.'" *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003). Because of the unavailability of *respondeat superior* liability for corporations under § 1983, however, it is necessary that the agent who acted in an unconstitutional manner did so pursuant to some custom or policy of the corporation or due to some failure to train—in other words, for the same reasons which suffice to hold municipal corporations liable under § 1983 for the actions of their agents. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817-18 (6th Cir. 1996). Nevertheless, claims of § 1983 liability may be asserted directly against corporate parties, and Defendants' opposing memorandum does not address this possible basis of corporate liability. As noted, it also does not address *respondeat superior* liability for state-law based claims. Therefore, to the extent that the proposed amended complaint alleges liability of these three entities either for their direct participation in a constitutional deprivation, or as a result of actions of their agents which give rise to liability under

state law, such allegations are not futile.

## D. Corrections Officers Underwood, Wright, Gianengeli and Drake

Officers Underwood, Wright, Gianengeli, and Drake were apparently the officers on duty in the segregation unit on the day that Mr. Amick was attacked. Defendants assert that joining them as defendants on some type of failure to protect theory would be futile because Plaintiffs have not offered a "scintilla of evidence" that any of them either was subjectively aware that Mr. Amick was at risk of being attacked or that any of them would have had the authority to change his cell assignment to a single cell in order to protect him. They also assert that adding all of these new defendants at this stage of the case would unnecessarily complicate and delay its resolution.

The reply memorandum makes clear that these officers are intended to be substituted for John Doe defendants originally named in the first cause of action, which arises under § 1983. Plaintiffs claim they will have evidence that for a significant period of time prior to the attack, prisoners were clamoring for the guards to respond to the area of the attack, but no one did so. They also assert that events in the days prior to the assault would have alerted these officers that a problem existed and that Mr. Amick was at risk of being attacked.

Again, the quality or quantity of the evidence supporting this claim is not the issue. Defendants do not argue that the proposed amended complaint does not state a claim against any of these corrections officers under § 1983. Further, the Court presumes that fact discovery has focused on the events on the day in question and leading up to it, and that these officers will be represented by the same counsel who already represents other state defendants. Therefore, their joinder is neither an

exercise in futility or such a complicating factor that the resolution of the case will be delayed unduly.

**E. The Failure to Train and Supervise Claim**

One of the stated purposes of the proposed amended complaint is to clarify that Plaintiffs are asserting a failure to train and supervise claim under 42 U.S.C. § 1983. Defendants, in opposing this portion of the motion, argue that the added language in the proposed amended complaint does not cure the deficiencies in this claim because it does not identify with any specificity the policy or action which allegedly prevented adequate training from occurring or which would have restricted any subordinate officials from taking appropriate action such as placing Mr. Amick in a single cell for his protection. In response, Plaintiffs point out that the original complaint and the amended complaint are both replete with allegations that Defendants lacked the appropriate training to deal with mentally ill inmates such as Mr. Amick or to assess them properly, and that this led directly to the decision to deprive him of his medications and caused him to lose touch with reality, thus leading to his aberrant behavior and the resulting assault.

It is true that, under the recent Supreme Court decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), a plaintiff must plead more than bare legal conclusions that do nothing but recite, in conclusory fashion, the elements of a legal claim, and any allegations in a complaint must pass the "plausibility" test. Here, it is at least arguable that Plaintiffs have pleaded not only the legal elements of a §1983 claim for failure to train and supervise, but specific facts in support of that claim, so that it can be said that proof of such a claim is plausible. The

Court does not believe that a complaint sounding in this theory need be so specific as to identify some written policy under which officers are denied training; rather, supervisory liability for failure to provide adequate training may be premised upon a custom or practice and not just a written policy. *See, e.g., City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989); *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 816 (6th Cir. 2005). Consequently, it is not an exercise in futility to allow this claim to be clarified.

**F. John Doe Defendants**

The final issue raised by the motion can quickly be resolved. The parties disagree about whether, if additional John Doe parties are identified, claims against them would be timely or would be barred by the applicable statutes of limitations. Because there is currently no request to identify any additional John Does beyond the ones discussed above, there is no live issue for the Court to adjudicate. Consequently, this issue will not be addressed in this Opinion and Order.

**IV.**

There is one additional pending motion that it is appropriate to address in the context of this Order. On March 21, 2011, Defendants filed an unopposed motion to extend the time to file dispositive motions, requesting an eleven-day extension based on the rescheduling of two expert witness depositions. ECF No. 107. The amount of time requested is not unreasonable and may also allow for dispositive motions which address the claims added by the amended complaint. Consequently, that motion, ECF No. 107, will be granted.

## V.

For all of the above reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Amended Motion for Leave to File a First Amended Complaint. ECF No. 83. Within fourteen days, Plaintiffs shall file an amended complaint in compliance with the rulings made in this order and promptly serve it upon any newly-joined parties. The Court also **GRANTS** Defendants' unopposed motion to extend the summary judgment filing date from April 11, 2011, to April 22, 2011. ECF No. 107.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**